**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

ZACHARY A PERKINS,

      Plaintiff,

      v.

MOMPER INSULATION OF FORT
WAYNE LLC,

      Defendant.

CASE NO. 1:25-CV-140-HAB

## OPINION AND ORDER

Pro se Plaintiff Zachary Perkins ("Perkins") is suing Defendant Momper Insulation of Fort Wayne, LLC ("Momper") for wrongful discharge in violation of public policy. (ECF 3). Perkins claims Momper fired him in retaliation for reporting that a co-worker bought alcohol on the job, drove drunk on the job, and brought a firearm to work. (*Id.*). Perkins, a felon who cannot possess a firearm, asserts that he was unlawfully fired for blowing the whistle on his co-workers actions, one of which could have made him personally liable for an illegal act. (*Id.*).

Momper now moves for summary judgment. (ECF 20, 21). Perkins filed no timely response to the motion,[1] and Momper filed a subsequent notice of non-opposition. (ECF 30). Because Perkins's allegations cannot support a claim for wrongful discharge in violation of public policy under Indiana law, the motion will be granted.

---

[1] Perkins originally retained Attorney Christopher Myers. (ECF 3). Momper filed its motion on February 12, giving Perkins until March 11 to respond. (ECF 20). Perkins requested an extension, which this Court granted over Momper's objection with a new deadline of April 13. (ECF 22, 23). On April 10, Attorney Myers moved to withdraw. (ECF 24). The Court granted the motion on April 13 and gave Perkins until May 13 to respond to Momper's motion. (ECF 26). The Court later granted yet another extension until May 28 at Perkins's request. (ECF 28, 29). Despite all these extensions, Perkins never filed a response. (ECF 30). Perkins later sent two handwritten letters more than one month after this final deadline extension passed asking for more time to file a response and for a hearing. (ECF 31, 33). The Court denied these requests. (ECF 32, 34).

**BACKGROUND**

Along with the Statement of Material facts in its brief, Momper submitted transcripts from Perkins's deposition and a termination letter for former Momper installer Kizer Simon ("Simon"). (ECF 21-1, 21-2). The undisputed facts gleaned from these are as follows:

On January 24, 2023, Momper hired Perkins as a full-time insulation installer in Fort Wayne, Indiana. (ECF 21, ¶¶ 2–3).[2] Perkins shifts started at 6:00 a.m. and ended between 3:00 and 5:00 p.m. (*Id.*, ¶ 6). His employment lasted only four weeks. (*Id.*, ¶ 1).

Two weeks into his employment, Perkins was assigned to work with Simon as his new lead installer. (*Id.*, ¶ 10). But this was short-lived. One day, Perkins and Simon stopped at a gas station while taking a Momper truck to a job site. (*Id.*, ¶ 11). Simon bought several bottles of alcohol at the gas station, which he then drank while driving the truck the rest of the way to the job site. (*Id.*). Upon arrival, Perkins took the truck keys from Simon and proceeded to drive the truck for the rest of the day. (*Id.*, ¶ 12).

That was not the only issue Simon created. Simon owned a firearm that he usually kept in his personal vehicle. (*Id.*, ¶ 13). On that day, he kept the firearm in his personal tool bag that he took to the job site. (*Id.*). As a felon, Perkins could not legally possess a firearm. (*Id.*, ¶¶ 7-9). He thus could not have control over Simon's firearm without committing a crime. (*Id.*). That never occurred though. Simon forgot his tool bag at the end of the day's shift. (*Id.*, ¶ 14). Perkins noticed and reminded Simon to collect it, which Simon then did. (*Id.*). Perkins never held or otherwise had control of Simon's tool bag or the firearm inside. (*Id.*, ¶ 15; *see also* ECF 21-1, at 38).

The next day, Perkins reported both incidents to a supervisor. (ECF 21, ¶ 17). The supervisor promptly reassigned Perkins to a new lead installer, Kyle Hamrick ("Hamrick"), and

---

[2] Momper statements of material facts, separated by paragraph, within the facts section of its brief. (ECF 21, at 4–9).

2

spoke to Simon about the incidents. (*Id.*, ¶ 18). Perkins never worked with Simon again after this. (*Id.*, ¶ 19). Momper received another allegation about Simon buying alcohol on the job about one-and-a-half months later. (*Id.*, ¶ 21). At that time, Simon confessed and he was immediately fired. (*Id.*; ECF 21-2).

Perkins wound up having other problems with Hamrick, and with Momper as a whole. (ECF 21, ¶¶ 22–29). Perkins took unapproved time off for an orthodontist appointment. (ECF 21-1, at 69). Time records also show Perkins was absent without notice on February 10, although he disputes this. (ECF 21, ¶¶ 25-26). Supervisors had two documented conversations with Perkins on February 3 and 15 to address his attendance issues and work pace. (ECF 21, ¶¶ 23, 24, 27; ECF 21-1, at 69, 76). The day after the second conversation, Perkins sent a lengthy email complaining of actions taken by Hamrick and other Momper employees. (ECF 21, ¶¶ 22–23; ECF 21-1, at 78). On February 17, Momper fired Perkins for "attendance issues and exhibit[ing] passive-aggressive behavior creating a toxic workspace." (ECF 21, ¶ 29; ECF 21-1, at 77).

## **LEGAL STANDARD**

Summary judgment is appropriate if a moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, evidence must be viewed in the light most favorable to the non-moving party. *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014). Put another way, a court will only grant summary judgment "if, on the evidence presented, no reasonable juror could return a verdict in [the non-moving party's] favor." *Sorensen v. WD–40 Co.*, 792 F.3d 712, 722 (7th Cir. 2015). The Court does not supersede the jury's role in making credibility determinations and weighing the evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**DISCUSSION**

Perkins alleges that Momper wrongfully fired him in violation of public policy. He claims he was fired in retaliation for reporting that Simon bought alcohol on the job, drank on the job, and had a gun around him at work.

To support a claim for retaliatory discharge in violation of public policy, Perkins must show (1) that he "opposed an unlawful employment practice; (2) that [he] was the object of adverse employment action; and (3) that the adverse employment action was caused by h[is] opposition." *Hamann v. Gates Chevrolet, Inc.*, 910 F.2d 1417, 1420 (7th Cir. 1990). In cases like this one, an "unlawful employment practice" only occurs in a precise set of circumstances.

Indiana law provides "a strong presumption that all employment is at-will, and may be terminated at any time, with or without cause, by either party." *Tsahas v. Cmty. Found. of Nw. Indiana, Inc.*, No. 2:21 CV 279, 2023 WL 4763139, at *3 (N.D. Ind. July 25, 2023) (citing *Orr v. Westminster Vill. N., Inc.*, 689 N.E.2d 712, 717 (Ind. 1997)). The exceptions to this doctrine are few and narrow. *Id.*

One such exception—the only one which could apply here—covers employees discharged "for refusing to commit an illegal act." *McClanahan v. Remington Freight Lines, Inc.*, 517 N.E.2d 390, 393 (Ind. 1988). But this exception is "tightly defined" and only covers situations where the employee "would be *personally liable*," *id.* (emphasis added), and "whistle-blowers are not included in the narrow exception recognized under Indiana law." *Bregin v. Liquidebt Sys., Inc.*, No. 1:06-CV-23-TS, 2008 WL 150611, at *14 (N.D. Ind. Jan. 14, 2008), *aff'd*, 548 F.3d 533 (7th Cir. 2008); *see also Wilmington v. Harvest Ins. Companies*, 521 N.E.2d 953, 955 (Ind. Ct. App. 1988) ("Even good faith whistle blowers are not within the exception."); *McClanahan*, 517 N.E.2d at 393 n. 1 ("It is on this basis that the so-called 'whistle-blower' cases may be distinguished. . . .

4

In such cases, the employees' reports of their employers' illegal activities, while certainly advantageous if substantiated, were not mandatory under the law, unlike compliance with a state's penal code.")

Momper argues that summary judgment is appropriate because Perkins's allegations essentially amount to a whistle-blower claim that falls outside the public policy exception to at-will employment. The Court agrees.

Perkins's allegation that he was fired for reporting Simon's behavior, even if true, falls squarely into the bucket of whistle-blower claims that are not covered by the public policy exception to at-will employment. The exception would only apply here if Perkins refused an order from Momper or a supervisor that would have made him liable for a criminal offense. Yet Perkins has not even so much as *alleged* that Momper, Simon, or anyone else ever ordered him to engage in criminal conduct, let alone provided evidence of such an order.[3] In fact, he has not even alleged anyone gave him any order of any kind related to these events.

Nor did Perkins ever risk personal criminal liability. In Perkins's own version of events described in his deposition, he never had to drive while intoxicated. (ECF 21-1, at 34–35). In fact, he took over the driving as soon as Simon finished the drive to the job site. (*Id.*). He also never possessed Simon's firearm or the tool bag with the firearm inside it. (*Id.*, at 37–38). Thus, nothing in the record supports the existence of an order for Perkins to engage in an illegal act. As a result,

---

[3] Of course, Perkins's failure to provide evidence stems from failure to respond to Momper's motion at all. But even viewing Momper's evidence in the light most favorable to Perkins, the Court cannot discern any factual basis to support the existence of any order that would have led to Perkins committing an illegal act.

he cannot have been fired for refusing such an order and cannot prove that he opposed an unlawful employment practice.[4]

"Summary judgment is the put up or shut up time in litigation." *Brown v. CACH, LLC*, 94 F.4th 665, 667 (7th Cir. 2024) (internal quotation omitted). Perkins has put up nothing. And based on the undisputed evidence Momper has placed before the Court, Perkins's claim fails as a matter of law.

### **CONCLUSION**

For these reasons, Momper's Motion for Summary Judgment (ECF 20) is GRANTED.

**SO ORDERED** on July 28, 2026.

s/ *Holly A. Brady*
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT

---

[4] In his initial complaint, Perkins alleged that Momper's states reasons for firing him were pretext for the retaliatory motive he alleged. (ECF 3). Because the Court concludes that Perkins did not oppose an unlawful employment practice, it need not address causation or pretext.